UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

FLOYD D. MARLOW,

        Petitioner,

        v.                                 Case No. 05-C-0824

CATHERINE J. FARREY,

        Respondent.

DECISION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DISMISSING CASE

Floyd Marlow challenges his November 28, 2000, judgment of conviction entered after a jury found him guilty of first-degree reckless homicide with the use of a dangerous weapon as a party to the crime.[1] (Doc. 18, Ex. A.) Marlow and his co-defendant, Dwight Campbell, were charged with killing Johnnie Humphrey on July 17, 1999. Prior to trial, Marlow and Campbell moved to sever but the trial court denied the motion on the ground that the defenses were not antagonistic. At trial, Marlow stipulated that on August 2, 1999, he was in possession of the gun that discharged three of the casings found at the Humphrey murder scene. Several witnesses testified that they saw Marlow at the scene and heard Marlow say, "We killed that [N-]." Although neither defendant testified, Campbell put on an alibi defense through his girlfriend's testimony. The trial court denied a motion to dismiss based on insufficiency of the evidence, and instructed the jury on first-degree intentional homicide and the lesser included offense of first-degree reckless homicide. The jury acquitted Marlow on the intentional count, and the trial court sentenced Marlow to forty

---

[1]Marlow was also convicted of first-degree recklessly endangering safety and battery but does not challenge these convictions.

years on the first-degree reckless homicide, with the use of a dangerous weapon, as a party to the crime. Marlow filed a direct appeal arguing that the evidence was insufficient and that the trial court erred in refusing to sever his trial or otherwise strike a juror for cause. The Wisconsin Court of Appeals affirmed his judgment of conviction. *State v. Marlow*, 2004 WL 1057636 (Wis. Ct. App. May 11, 2004). Afterward the Wisconsin Supreme Court denied a petition for review. (Doc. 1.)

The procedural history of the pending petition is relevant to the disposition of the case. The respondent filed an answer to the petition as ordered by Magistrate Judge Aaron E. Goodstein; however, Marlow filed his refusal to consent to the jurisdiction of the magistrate judge. (Docs. 11, 15.) After the case was transferred to this court, Marlow moved to hold his petition in abeyance on the grounds that he believed that his rights pursuant to *Winship* and *Jackson* were violated. (Doc. 19.) This court denied the motion, and Marlow moved for reconsideration asserting, in part, that he would like the state court to determine whether the charge of first-degree reckless homicide, while armed, as a party to the crime, is an offense under Wisconsin law. (Doc. 21.) Again, the court denied the motion because the Wisconsin Surpeme Court previously denied Marlow's petition for certiorari on that issue after Marlow failed to raise it during his direct appeal. (Doc. 24.)

In denying his motion for reconsideration, this court also discussed each of Marlow's claims and denied his petition. Marlow argued that (1) there was insufficient evidence to support his conviction, (2) his due process rights were violated, (3) the state committed an error when it refused to sever his trial from that of his co-defendant; the trial court failed to give proper jury instruction regarding his co-defendant, (5) the trial court improperly denied his motion to strike a particular juror, and (6) his trial and appellate counsel were ineffective.

2

(Doc. 24.) Three of the claims were exhausted: insufficient evidence, denial of the motion to sever and denial fo the motion to strike a juror. These claims were denied on the merits inasmuch as the Wisconsin Court of Appeal's decision was neither contrary to, nor involved an unreasonable application of clearly established United States Supreme Court law was based on an unreasonable determination fo the facts in light of the evidence presented in the state court proceeding.

Nevertheless, this court declined to rule on the merits of the due process claim because of procedural default and Marlow's failure to show cause and prejudice. Similarly, Marlow had procedurally defaulted the jury instruction claim. Marlow could not prevail on that claim because the Wisconsin Court of Appeals concluded that counsel's failure to object resulted in waiver. Finally, the court found that Marlow's ineffective assistance of counsel claims were still viable in the state courts in a § 974.06 motion or a *Knight* petition with the Wisconsin Court of Appeals.

The Seventh Circuit Court of Appeals vacated the judgment and remanded with instructions to issue a stay to permit Marlow to exhaust his claims in state court. (Doc. 31.) In so ruling, the Seventh Circuit acknowledged that the court had ruled on the merits of the exhausted claims but that the dismissal of the unexhausted claims without prejudice was in error.

Following the Seventh Circuit's mandate, this court granted the motion for a stay and abeyance. (Doc. 33.) Five months later, the respondent moved to compel Marlow to update the status of the case. (Doc. 34.) Based on state records, it appeared that Marlow filed a state court petition for habeas corpus relief in July of 2007. *Marlow v. Lundquist,* 2007AP1594 (Wis. Ct. App. Dist. I). The Court of Appeals denied the petition on August 28,

3

2007, and Marlow did not file a petition for review with the Wisconsin Supreme Court. Marlow responded to the motion to compel with a motion to lift the stay and abeyance order. (Doc. 35.) In his motion, he asked this court to review his Sixth Amendment claims which "were denied by the Wisconsin Court of Appeals and as of this date, procedurally barred by the Wisconsin State Supreme Court." Marlow explained that he did not meet the required filing dates to seek review from the Wisconsin State Supreme Court. Based on Marlow's motion, this court lifted the stay and set a briefing schedule. (Doc. 41.) Pursuant to the court's order, Marlow filed his brief in support of his petition, and respondent filed its brief in opposition. However, Marlow did not file a reply as permitted by the briefing order.

In the brief filed in support of his petition, Marlow addressed five claims (1) the evidence was insufficient at the close of the state's case as a matter of law, (2) first-degree reckless homicide as a party to a crime violates the 14th Amendment pursuant to *Winship* and *Jackson* because the charge does not require intent, (3) the trial court erred in denying his motion to sever, (4) the trial court failed to give the proper jury instruction regarding a joined defendant, and (5) the trial court erred in denying his motion to strike juror number 32. (Doc. 44.)

Respondent's brief addressed each claim in turn, pointing out that Marlow raised these claims in his original petition and it is unclear why he pursued a stay of his case. (Doc. 47.) However, neither party acknowledged that the court previously dismissed three of the five claims on the merits: insufficiency of the evidence, denial of the motion to sever, and refusal to strike a juror. (Doc. 24.) Moreover, Marlow failed to present any factual or legal bases for revisiting the prior rulings. Nevertheless, the court will briefly discuss each

4

claim before turning to the issue of combining first-degree reckless homicide with party to a crime and the jury instruction.

Generally, § 2254 limits the ability of district courts to grant habeas relief to state prisoners. Relief will not be granted unless the court determines that the state court's adjudication of a claim resulted in (1) a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The federal courts review the decisions of the state courts on a deferential standard of review. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). The factual findings are presumed correct unless the petitioner rebuts this presumption with "clear and convincing evidence." *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007).

Moreover, a federal court may not grant a petition if it finds that the state court applied state law incorrectly or inappropriately. *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). Instead, a federal court can issue a writ under § 2254 only if it determines that the state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000). This is a difficult standard particularly because the courts define unreasonable as "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).

Additionally, pursuant to § 2254, state prisoners cannot present a claim in federal court until they exhaust their state court remedies and subject their claims to a complete

5

round of state appeals. *See Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *O'Sullivan*, 526 U.S. at 845. Failure to exhaust available state court remedies constitutes a procedural default when a claim "was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514.

Procedural default may also occur where the state court addressing the petitioner's claim disposed of it on an adequate and independent state law ground. *Coleman v. Thompson*, 501 U.S. 722, 729–32, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Federal courts will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *Id.*, 501 U.S. at 729. The independent and adequate state ground doctrine applies to "bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.*

As discussed above, the court previously dismissed Marlow's insufficiency of the evidence claim on the merits in the March 12, 2007, decision and order. The United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979), set forth the pertinent standard: the evidence, construed in the light most favorable to the state, is sufficient to support the conviction so long as any rational trier of

6

fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. Under *Jackson*, a petitioner is only "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Cabrera v. Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson*, 443 U.S. at 324).

The Wisconsin Court of Appeals properly applied this standard when holding that the conviction could only be reversed if "the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilty beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). In rejecting Marlow's claim, the Court of Appeals reasoned:

> Here, there is ample evidence to support a finding that Marlow's conduct was imminently dangerous to human life. Arlester Jones testified that Campbell shot at him and a porch full of people. Renetta Barnette and Jeanette Anderson testified that they saw Marlow and Campbell run down an alley toward the scene of the shooting and run back moments later with guns in their hands. They also testified that they heard Marlow say that they killed a man. Moreover, Marlow stipulated that three casings found at the murder scene were from his gun. A reasonable jury could infer from this evidence that Marlow or a coactor associated with Marlow recklessly caused [the victim's] death, and that these actions showed utter disregard for [the victim's life]. *State v. Marlow*, 2004 WL 1057636 at 3 (Wis. Ct. App. May 11, 2004)

Marlow argues that there is no evidence regarding the intent of the men, mentioned above, who were going down the alley "much less that Marlow knew what was the intention of Campbell - who was later determined to be the shooter." However, as the Wisconsin Court of Appeals correctly noted, a person is guilty of first-degree reckless homicide if (1) the person caused the death of the victim, (2) by criminally reckless conduct, (3) that showed an utter disregard for human life. "Utter disregard for human life" is an objective

7

standard that did not require any particular state of mind but rather conduct that is imminently dangerous to human life. *State v. Blanco*, 125 Wis.2d 276, 281, 371 N.W.2d 406, 409 (Wis. Ct. App. 1985). Based on the proper application of the standard to the evidence referenced by the Wisconsin Court of Appeals, Marlow's insufficiency of the evidence claim is dismissed.

Next, Marlow attacks the trial court's refusal to sever his case from that of his co-defendant. This claim was dismissed on the merits in the March 12, 2007, order because the ruling by the Wisconsin Court of Appeals was not contrary to or otherwise involve an unreasonable application of clearly established United States Supreme Court law. Indeed, the Wisconsin Court of Appeals found no prejudice because co-defendant Campbell's alibi defense did not implicate or have a connection to Marlow's defense. Moreover, the trial court read separate instructions for Marlow and Campbell for the first-degree intentional homicide charge and the first degree recklessly endangering safety charge and the case was not so complicated that the jury could not follow the instructions and consider the evidence separately. This was not an unreasonable determination of the facts in light of the evidence presented during the state court proceeding, particularly where witness testimony and physical evidence placed Marlow and Campbell at the scene of the crime.

Similarly, this court denied, on the merits, Marlow's claim that the trial court erred when it refused to strike juror number 32 who was employed by the City of Milwaukee Police Department (Doc. 18, Ex. Z at 48) and training to become a police office (*id.* at 59, 107), said he was tired of hearing about homicides (*id.* at 138), and added that "they're here because they must have done something wrong" (*id.* at 137.) The juror also testified that he would not assume a police officer always tells the truth, would analyze an officer's

8

testimony just like any other citizen, would not hesitate to go back to the police academy and tell fellow officers that he acquitted someone, and that he believed he could be fair because a defendant is innocent until proven guilty. (*Id.* at 107, 108, 137.) The court noted that juror number 32 repeatedly said that he could be fair, that a defendant could be unfairly charged, and that the defendants could be innocent. (*Id.* at 148.)

Significantly, juror number 32 did not serve on the panel because he was removed by one of the parties. The Wisconsin Court of Appeals cited *State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 233 (2001), for its holding that "the substantial rights of a party are not affected or impaired when a defendant chooses to exercise a single peremptory strike to correct a court error." This ruling is consistent with United States Supreme Court case law holding that no due process violation has occurred when a court fails to strike a biased juror for cause but the juror is removed from the panel by a party's peremptory challenge. *United States v. Martinez-Salazar*, 528 U.S. 304, 313-17 (2000). In the absence of any showing that the state court was unreasonable based on the evidence presented, there is no bases to revisit this court's previous dismissal of this claim.

This leaves two remaining claims: the *Winship* claim that Marlow's due process rights were violated when the State failed to prove the elements of the party to a crime charge and the argument that the trial court should have read a limiting instruction to the jury regarding each of the defendants. Marlow failed to pursue these claims at each level of the state courts notwithstanding a stay and abeyance imposed for the purpose of allowing him to return and exhaust these claims.

Marlow was required to fairly present his federal claims to the state courts in order to give the state an opportunity to pass upon and correct the alleged violations of his rights.

9

*Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (quoting *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995)). To fairly present a federal claim, he must put the claim through one complete round of the State's established appellate review process. *Id.* at 752 (citing *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). "Failure to do so precludes review by federal courts." *Id.*

Marlow never argued that combining the first-degree reckless homicide charge with the party to a crime charge violated his rights under the Fourteenth Amendment and *Winship* because homicide by reckless conduct does not require intent the charge of being a party to a crime requires intent or premeditation. Presumably, Marlow cites to *Winship* for its holding that due process prevents a criminal defendant from being convicted of an offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368, (1970).

On direct appeal, Marlow argued that the evidence was insufficient, as a matter of law, to establish his state-of mind at the time the crime was committed. Rather, the only inference available from the evidence was that Marlow was in the company of the shooter when Marlow said "we killed that [N-]" but no evidence that he shot Humphries. Marlow reasoned that he could only be guilty as a party to the crime. However, the record lacked evidence that he aided or abetted the shooting. While Marlow never argued that it is unconstitutional to apply the party to a crime statute to a reckless homicide, the two are not mutually exclusive as the Wisconsin Court of Appeals determined there was "ample evidence to support a finding that Marlow's conduct was imminently dangerous to human life." Specifically, Renetta Barnette heard gunshots and saw Marlow, who she knew as

10

Nanapoo, and other men, including Campbell, run down the alley towards 24th Street where Humphrey was shot. (Doc. 18, Ex. DD at 17, 49.) Barnette's mother, Jeanette Anderson, testified that she saw Campbell, a/k/a Diamond, and Marlow, a/k/a Nanapoo, going towards the scene of the crime, heard shots, and saw them coming back while overhearing Marlow say, "we killed that [N-]." (Doc. 18, Ex. DD at 82-89.) As such, Marlow cannot establish prejudice.

Further, regarding the jury instruction issue, the Wisconsin Court of Appeals found that the court read separate instructions for Marlow and Campbell and submitted separate verdict forms. Counsel's failure to object to a more specific limiting instruction to the jury and Marlow's failure to address this failure was a waiver. (Doc. 18, Ex. E at 9-10.) Marlow has admitted that he did not pursue this issue with the Wisconsin Supreme Court. Moreover, Marlow cannot show prejudice where the Court of Appeals found "ample evidence" of guilt as to Marlow and there has been no showing that a fundamental miscarriage of justice will occur.

Now, therefore,

IT IS ORDERED that Floyd Marlow's petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

11